Filed 7/1/15  P. v. Palenzuela CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THOMAS MOJICA PALENZUELA,<br><br>Defendant and Appellant. | F068108<br><br>(Super. Ct. No. BF142084A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  H. A. Staley, Judge.*

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Retired Judge of the Kern Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# INTRODUCTION

In April 2012, appellant Thomas Mojica Palenzuela fired a single shot from a semi-automatic handgun, injuring one victim in the arm although he was aiming at a second victim. As relevant to this appeal, a jury convicted him of attempted murder of both victims (Pen. Code, §§ 664/187, subd. (a); counts 1 & 2),[1] finding true the special allegation appellant inflicted great bodily injury in count 1 upon the first victim (§ 12022.53, subd. (d)). The jury also convicted appellant of assault with a firearm (§ 245, subd. (a)(2); counts 3 & 4) as to the first victim, finding true that appellant inflicted great bodily injury (§ 12022.7). In addition, the jury convicted appellant of being an active participant in a criminal street gang (§ 186.22, subd. (a); count 5).

On appeal, appellant contends the evidence was insufficient to support his intent to kill the first victim or to support the jury's true findings that the first victim suffered great bodily injury in counts 1 and 3. We find these arguments unpersuasive.

Appellant raises three additional issues: first, the trial court erred when it imposed prison terms in count 2 for two firearm enhancements under sections 12022.53 and 12022.5 without staying the lesser one. Respondent concedes error occurred.

Second, the evidence was insufficient to support his conviction in count 5 for participation in a criminal street gang. Respondent concedes error occurred.

We accept respondent's concessions as proper. Accordingly, we reverse count 5 and order correction of the abstract of judgment to reflect the staying of the firearm enhancement in count 2 under section 12022.5, subdivision (a). On our own motion, we also order further modification of the abstract of judgment to reflect the other enhancements imposed in count 2 under sections 12022.53, subdivision (c) and 186.22, subdivision (b).

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

We otherwise affirm the judgment. In light of the reversal in count 5, we do not address appellant's final contention the trial court erred when it imposed a concurrent prison sentence in count 5 rather than staying punishment pursuant to section 654.

## FACTUAL AND PROCEDURAL BACKGROUND

Set forth below are the facts taken in the light most favorable to the judgment and relevant to the issues on appeal.

## I. Trial Evidence.

On April 16, 2012, appellant approached Samuel Guzman[2] and his stepson, Joseph Hernandez, on a public street in Kern County. Neither Guzman nor Hernandez had seen appellant before. For some unknown reason, appellant started an argument. Hernandez heard appellant say he was "Baby Sykes from Varrio Bakers" while Guzman heard appellant say he was "Baby Psycho from Bakersfield Varrio." Appellant produced a handgun, which he held to Guzman's head. Appellant pulled the trigger, but the gun did not fire. Appellant struck Guzman over the head with the gun, and Guzman fell to the ground. Guzman described the handgun as "neither very big nor very small."

Appellant chambered a round and then aimed the gun at Hernandez, who was about four or five feet away. Hernandez started to run away. Guzman saw appellant aiming at Hernandez's back so he stood between appellant and his stepson. Appellant fired once, shooting Guzman through his right arm about an inch above the elbow. Guzman testified appellant was still pointing the gun at Hernandez when he fired. Appellant ran away.

Guzman walked several blocks to a hospital holding his injured arm. He entered the emergency room at approximately 5:00 p.m. where he received stitches for his head wound. No evidence was received regarding any specific treatment of his bullet wound.

---

[2] The information identified this person as "Samuel Guzman Hernandez Sr." but at trial he testified his last name was "Guzman." For clarity we will identify him as Guzman.

While in the hospital, law enforcement took his statement, and Guzman appeared heavily medicated or in pain. He was released from the hospital the following morning at approximately 10:00 a.m. without requiring surgery. The bullet wound left a scar, which he showed the jury at trial.

Law enforcement did not find any physical evidence at the crime scene, such as a bullet or a shell casing. Appellant, however, was an admitted member of the Varrio Bakers street gang with the moniker of "Baby Sykes." Through that moniker, law enforcement tracked down appellant. Through a six-pack photographic lineup, both Guzman and Hernandez identified appellant as their assailant.

During a police interview, Guzman stated appellant loaded a bullet into his gun's chamber and then pointed the gun at Hernandez, who was running away. At that point, Guzman stood up between appellant and Hernandez, and appellant fired.

## II. Information.

On August 8, 2012, the District Attorney's Office of Kern County filed an amended information charging appellant with 11 counts. The relevant counts, 1 through 6, are set forth below:[3]

Count 1: attempted murder of Guzman (§§ 664/187, subd. (a)). It was further alleged the offense was committed to promote a criminal street gang (§ 186.22, subd. (b)); appellant personally and intentionally discharged a firearm which caused great bodily injury (§ 12022.53, subd. (d)); appellant was convicted of a prior felony offense (§ 667, subds. (c)-(j), § 1170.12, subds. (a)-(e)); and appellant was convicted of a serious prior felony offense (§ 667, subd. (a)).

Count 2: attempted murder of Hernandez (§§ 664/187, subd. (a)). It was further alleged the offense was committed to promote a criminal street gang (§ 186.22, subd.

---

[3] Counts 7 through 11 dealt with a different victim on a different date. The jury found appellant not guilty as to counts 7 through 11. These counts are not set forth in this opinion.

4.

(b)); appellant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); appellant personally used a firearm (§ 12022.5, subd. (a)); appellant was convicted of a prior felony offense (§ 667, subds. (c)-(j), § 1170.12, subds. (a)-(e)); and appellant was convicted of a serious prior felony offense (§ 667, subd. (a)).

Count 3:  assault on Guzman with a firearm (§ 245, subd. (a)(2)).  It was further alleged the offense was committed to promote a criminal street gang (§ 186.22, subd. (b)); appellant personally used a firearm (§ 12022.5, subd. (a)); appellant inflicted great bodily injury upon Guzman (§ 12022.7); appellant was convicted of a prior felony offense (§ 667, subds. (c)-(j), § 1170.12, subds. (a)-(e)); and appellant was convicted of a serious prior felony offense (§ 667, subd. (a)).

Count 4:  assault on Hernandez with a firearm (§ 245, subd. (a)(2)).  It was further alleged the offense was committed to promote a criminal street gang (§ 186.22, subd. (b)); appellant personally used a firearm (§ 12022.5, subd. (a)); appellant was convicted of a prior felony offense (§ 667, subds. (c)-(j), § 1170.12, subds. (a)-(e)); and appellant was convicted of a serious prior felony offense (§ 667, subd. (a)).

Count 5:  appellant participated in a criminal street gang (§ 186.22, subd. (a)).  It was further alleged appellant was convicted of a prior felony offense (§ 667, subds. (c)-(j), § 1170.12, subds. (a)-(e)); and appellant was convicted of a serious prior felony offense (§ 667, subd. (a)).

Count 6:  appellant unlawfully possessed a firearm (§ 29800, subd. (a)(1)).  It was further alleged the offense was committed to promote a criminal street gang (§ 186.22, subd. (b)); appellant was convicted of a prior felony offense (§ 667, subds. (c)-(j), § 1170.12, subds. (a)-(e)); and appellant was convicted of a serious prior felony offense (§ 667, subd. (a)).

## III.    Verdicts and Sentencing.

The jury found appellant guilty as charged in counts 1 through 6, finding true all special allegations.  The trial court sentenced appellant as follows:

5.

Count 1: 18 years (§§ 664/187, subd. (a)), plus 25 years to life (§ 12022.53, subd. (d)), plus a 10-year enhancement (§ 186.22, subd. (b)), and a five-year enhancement (§ 667, subd. (a)).

Count 2: 18 years (§§ 664/187, subd. (a)), plus a 10-year enhancement (§ 186.22, subd. (b)), plus a 20-year enhancement (§ 12022.53, subd. (c)), and a 10-year enhancement (§ 12022.5, subd. (a)), all to be served concurrently with count 1.

Count 3: eight years (§ 245, subd. (a)(2)), which was stayed pursuant to section 654.

Count 4: eight years (§ 245, subd. (a)(2)), which was stayed pursuant to section 654.

Count 5: six years (§ 186.22, subd. (a)), to be served concurrently with count 1.

Count 6: six years (§ 29800, subd. (a)(1)), to be served concurrently with count 1. Various fees and fines were imposed.

## DISCUSSION

### I.   Sufficient Evidence Supports the Verdict in Count 1.

Appellant asserts the evidence was insufficient to prove his intent to kill Guzman. He contends the conviction in count 1 must be reversed because it violated his due process rights under the Fourteenth Amendment.

#### A.   Background.

In the amended consolidated information, count 1 alleged appellant attempted to murder Guzman. (§§ 664/187, subd. (a).) It was further alleged, in part, appellant personally and intentionally discharged a firearm which proximately caused great bodily injury during the commission of the attempted murder (§ 12022.53, subd. (d)).

During closing arguments, the prosecutor reminded the jury that appellant put his gun to Guzman's head and pulled the trigger, but it did not fire. The prosecutor, however, did not argue or suggest the jury could find appellant liable for attempted murder from that act. Instead, the prosecutor emphasized it was up to the jury to interpret

6.

the moment appellant pointed his gun at Hernandez but Guzman "got in the way and the gun was fired." He asked the jury to decide whether appellant was trying to kill Hernandez or Guzman, and argued appellant could be guilty of both even though he fired once. The prosecutor also noted it was possible appellant intended to kill Hernandez but Guzman jumped in the way, interfering with the attempt to kill Hernandez, which would not be sufficient to find attempted murder of Guzman.

## B. Standard of review.

### 1. Sufficiency of the evidence.

For an appeal challenging the sufficiency of evidence, we review the entire record in the light most favorable to the judgment to determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt based on "'evidence that is reasonable, credible, and of solid value ….'" (*People v. Jones* (2013) 57 Cal.4th 899, 960.) In doing this review, we are not required to ask whether we believe the trial evidence established guilt beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) Rather, the issue is whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence favorably for the prosecution. (*Ibid*.) We are to presume the existence of any fact the jury could have reasonably deduced from the evidence in support of the judgment. (*Ibid*.)

### 2. Attempted murder.

For appellant to be convicted of attempted murder, the prosecution must prove he had a specific intent to kill and he committed a direct but ineffectual act toward accomplishing the intended killing. (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*); see §§ 187, subd. (a), 664.) The mental state required for attempted murder is different from that required for murder itself, which does not require the intent to kill because implied malice—a conscious disregard for life—is sufficient. (*Smith, supra,* at p. 739.) In contrast, attempted murder requires express malice. (*Ibid*.) Express malice and intent to unlawfully kill are the same concept. (*Ibid.*)

The act of firing a gun toward a victim at a close, but not point blank, range is sufficient to support an inference of intent to kill where the shot could have inflicted a mortal wound had the shot been on target. (*Smith, supra,* 37 Cal.4th at p. 741.) In addition, the fact that the victim may have lived because of the defendant's poor marksmanship does not establish a less culpable state of mind. (*Ibid.*)

The concept of transferred intent does not apply to attempted murder. (*People v. Stone* (2009) 46 Cal.4th 131, 140.) Instead, the defendant must intend to kill the alleged victim, and not someone else, to be guilty of attempted murder. (*Id.* at p. 136.)

We analyze appellant's contentions with these principles in mind.

**C.    Analysis.**

In a footnote, appellant notes the prosecution could have argued appellant was guilty of attempted murder of Guzman based on the evidence he put the gun to Guzman's head and pulled the trigger, but the gun did not fire. Appellant, however, argues the prosecution elected not to pursue this factual basis for count 1 and, instead, focused on whether intent to kill was demonstrated through appellant's single shot. Appellant further notes the information alleged he discharged a firearm during the attempted murder of Guzman (§ 12022.53, subd. (d)). He asserts no unanimity jury instruction was given, and one was not necessary, because the prosecution did not present multiple acts as the basis for count 1.

Respondent does not directly address the points raised in appellant's footnote. A review of the record, particularly the amended information and the prosecutor's closing arguments, establishes an election to present the act of firing the single shot as the basis for appellant's attempted murder of Guzman. Thus, a unanimity instruction was not required because the prosecution elected among two discrete potential crimes surrounding the attempted murder of Guzman. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Because the prosecution made such an election, our analysis focuses on whether substantial evidence supports the attempted murder from appellant's single shot.

Appellant maintains he intended to shoot Hernandez but Guzman jumped in the way. On the other hand, respondent argues Guzman was in the line of fire before appellant shot so a reasonable jury had substantial evidence of intent to kill Guzman. The record supports respondent's position.

Guzman consistently testified he stood between appellant and Hernandez before appellant fired and he made this same statement to law enforcement after the incident. Hernandez admitted he did not see much of the shooting because he was running. He testified he saw Guzman jump and grab appellant's arm, but confirmed he saw that after he heard the shot.

Appellant contends no juror could rationally conclude beyond a reasonable doubt that he intended to kill Guzman when he aimed his gun at Hernandez and fired. However, based on Guzman's testimony, appellant fired when Guzman stood between appellant and Hernandez. As such, the jury had sufficient evidence to determine Guzman was in the line of fire before appellant shot. The jury also had substantial evidence to determine appellant was motivated to shoot Guzman a second time after his first attempt failed. Although neither murder nor attempted murder requires proof of motive (*Smith, supra,* 37 Cal.4th at p. 740), "evidence of motive is often probative of intent to kill." (*Id.* at p. 741.) It is also well established that the defendant's actions and the circumstances of the case can be used to infer the mental state required to convict the defendant of attempted murder. (*Ibid.*)

Both parties cite *Smith, supra,* 37 Cal.4th 733. In *Smith*, the defendant fired a single shot into the rear of a vehicle from a distance of one car's length away. Two victims were in the car and in the line of fire. The defendant was convicted of attempted murder of both victims despite firing a single shot. The *Smith* court upheld the defendant's conviction for attempted murder against a substantial evidence challenge, emphasizing both victims were in the line of fire, which the defendant knew based on his testimony, and the shot was discharged from close range. (*Id.* at p. 743.)

9.

Here, appellant discharged his single shot from very close range to Guzman. The record does not establish how much time passed after Guzman stood between appellant and Hernandez before appellant fired. However, *Smith* supports affirming because Guzman was in the line of fire before appellant purposefully discharged a lethal weapon sufficiently close to have struck Guzman with a mortal wound. (*Smith, supra,* 37 Cal.4th at p. 741.)

Appellant, however, contends his circumstances are distinguishable from *Smith*, first arguing the defendant in *Smith* knew both victims were directly in his line of fire when he fired. He asserts he had no such knowledge because Guzman fell after he was struck over the head. He also argues Guzman was "virtually" right next to him when he aimed at Hernandez, contending the gunshot wound to Guzman's arm establishes the shot was meant for Hernandez. Appellant asserts Guzman's testimony shows appellant continued to aim at Hernandez even after Guzman stood between them. Based on these factors, he maintains no rational juror could have concluded beyond a reasonable doubt he intended to kill Guzman when he fired.

Unlike in *Smith*, where the defendant confirmed his knowledge that both victims were in the line of fire, appellant did not testify. The jury was left to determine appellant's state of mind from his actions and the circumstances surrounding the shooting. Although conflicting inferences may be drawn regarding whether or not appellant knew Guzman was in the line of fire, on appeal we view the evidence in the light most favorable to the judgment (*People v. Jones, supra,* 57 Cal.4th at p. 960) and presume the existence of any fact the jury could have reasonably deduced from the evidence in support of the judgment. (*People v. Johnson, supra,* 26 Cal.3d at p. 576.) It is not our role to determine whether the trial evidence established appellant's guilt beyond a reasonable doubt. (*Ibid.*)

It is the trier of fact who makes credibility determinations and resolves factual disputes. (*People v. Estrella* (1995) 31 Cal.App.4th 716, 724-725.) An appellate court

10.

will not substitute its evaluation of a witness's credibility for that of the fact finder. (*Smith, supra,* 37 Cal.4th at p. 739, citing *People v. Jones* (1990) 51 Cal.3d 294, 314.) When a jury believes a witness's statements, those statements will not be rejected on appeal unless a physical impossibility exists that they are true, or their falsity is apparent without resorting to inferences or deductions. (*People v. Friend* (2009) 47 Cal.4th 1, 41; *People v. Barnes* (1986) 42 Cal.3d 284, 306.)

Here, as stated above, during closing arguments the prosecutor noted it was possible Guzman jumped in the way and interfered with appellant's attempt to kill Hernandez. The prosecutor informed the jury it should not find appellant guilty of attempted murder of Guzman if that occurred. In rendering its verdicts, the jury rejected that version of events. Guzman testified he stood between appellant and Hernandez before appellant fired. Guzman did not testify that he jumped up or sprang in front of the gun. Appellant's discharge of his weapon with Guzman at such a close range supports an inference of appellant's intent to kill Guzman. (*Smith, supra,* 37 Cal.4th at p. 741.) In light of appellant's actions just moments before, i.e., attempting to shoot Guzman in the head and then striking Guzman over his head with the gun, the jury had substantial evidence regarding appellant's intent to kill Guzman after Guzman rose and stood between the gun and Hernandez.

It is clear the jury found Guzman's testimony credible and used his testimony to determine appellant formed an intent to kill Guzman. It was the jury's responsibility to assess the credibility of Guzman's testimony, which we will not reject on appeal. It was permissible for the jury to use Guzman's testimony, and his testimony alone, to resolve whether appellant had an intent to kill Guzman. (*People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031 [testimony of a single witness is sufficient for proof of any fact]; CALJIC No. 2.27.)

Even if the evidence regarding appellant's knowledge could be interpreted more than one way, the circumstances reasonably justified the jury's finding so the judgment

will not be reversed. (*People v. Abilez* (2007) 41 Cal.4th 472, 504 [opinion of reviewing court that circumstances might also reasonably be reconciled with a contrary finding of the jury does not warrant reversal of judgment].)

Appellant also contends the evidence in his case failed to disclose the type of firearm he used, other than it was a semi-automatic handgun. He argues this makes his situation distinguishable from *Smith*, where the defendant used a "powerful .38-caliber handgun." (*Smith, supra,* 37 Cal.4th at p. 743.) He asserts the lack of a casing or bullet found at the crime scene, and the lack of evidence regarding the bullet's trajectory after it passed through Guzman's arm, does not suggest he used a weapon which was, or which he believed was, capable of killing both men with a single shot.

This contention is unpersuasive as to count 1. Unlike in *Smith*, where the defendant fired a single shot through the rear of a vehicle, appellant fired at Guzman at nearly point blank range without anything between the gun and Guzman. Guzman described the handgun as "neither very big nor very small." Given the proximity of Guzman to appellant, the jury's determination was reasonable that appellant's single shot could have inflicted a mortal wound of Guzman. As such, the lack of evidence regarding the gun's caliber is irrelevant for count 1.

Appellant relies on *People v. Perez* (2010) 50 Cal.4th 222 (*Perez*). This reliance is misplaced. In *Perez*, the defendant fired a single bullet at a group of seven peace officers and a civilian who were standing less than 15 feet apart from each other and approximately 60 feet from the defendant. One officer was struck in the hand. The defendant was found guilty of eight counts of attempted murder. The Supreme Court held the evidence was sufficient to sustain only one count of premeditated attempted murder, finding the defendant intended to kill someone but did not target any particular individual. *Perez* noted the defendant did not use a means of force calculated to kill everyone in the group, eliminating a "kill zone" theory for multiple convictions. (*Id.* at p. 232.)

12.

Appellant argues his case is similar to *Perez* in that his gunshot was not a means of force calculated to kill both men and the evidence failed to establish his intent to kill Guzman. These arguments are without merit. As noted earlier, given the close proximity of Guzman to appellant, the jury's verdict in count 1 was reasonable. *Perez* does not require reversal.

The jury had sufficient evidence to find appellant had intent to kill Guzman. This evidence was reasonable, credible, and of solid value such that a reasonable jury could find appellant guilty beyond a reasonable doubt in count 1. (*People v. Jones, supra,* 57 Cal.4th at p. 960; *People v. Johnson, supra,* 26 Cal.3d at p. 576.)

## II. Sufficient Evidence Supports the Jury's True Findings as to the Great Bodily Injury Special Allegations for Counts 1 and 3.

Appellant asserts the evidence presented did not demonstrate Guzman's gunshot wound was serious enough to meet the definition of great bodily injury. He contends the jury's true findings as to the great bodily injury allegations in counts 1 and 3 must be reversed.

### A. Background.

The amended information included the following relevant special allegations. Regarding count 1 (attempted murder of Guzman), appellant personally and intentionally discharged a firearm which proximately caused great bodily injury to Guzman within the meaning of section 12022.53, subdivision (d). Regarding count 3 (assault with a firearm on Guzman), appellant personally inflicted great bodily injury upon Guzman within the meaning of section 12022.7. The jury found these special allegations true.

### B. Standard of review.

It is a question of fact for the jury to determine whether a victim suffered great bodily injury. (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) This is not a question of law. (*Ibid.*) On appeal, if sufficient evidence exists to sustain the jury's finding, the

appellate court must accept it even when the circumstances might reasonably point to a contrary finding. (*Ibid.*)

### C. Analysis.

Appellant concedes Guzman suffered an injury from the gunshot, but maintains it was not sufficiently *great* to meet the statutory definition in section 12022.7, subdivision (f). He asserts no evidence was presented regarding the size of Guzman's gunshot wound, any tears to Guzman's muscle tissue, injury to any bones, or bullet fragments left in Guzman's arm. He contends the gunshot wound did not interfere with Guzman's life because no evidence establishes Guzman missed work, had residual pain or discomfort, needed continuing medications, or lost the use of his arm.

Section 12022.53 imposes a sentence enhancement for the personal discharge of a firearm during the commission of certain enumerated felonies, including murder under section 187, if "great bodily injury" occurs as defined in section 12022.7. (§ 12022.53, subds. (a) & (d).) Section 12022.7 imposes a sentence enhancement on a person who inflicts "great bodily injury" in the commission of an attempted felony which does not include bodily harm as an element. (§ 12022.7, subd. (a).)

Section 12022.7 defines "great bodily injury" as "a significant or substantial physical injury" beyond what is inherent to the underlying offense. (§ 12022.7, subd. (f); see *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047.) The term "great bodily injury" has been used in California for over a century and courts have held it is not a technical term so that the jury can use its own common understanding in applying its application. (*People v. La Fargue* (1983) 147 Cal.App.3d 878, 886-887.)

Case law establishes that some physical pain or damage, such as lacerations, bruises, or abrasions, is sufficient to find a great bodily injury. (*People v. Washington, supra,* 210 Cal.App.4th at p. 1047; *People v. Jung* (1999) 71 Cal.App.4th 1036, 1042.) Gunshot wounds, even without significant lasting injuries, have been found sufficient to support a great bodily injury enhancement.

14.

In *People v. Miller* (1977) 18 Cal.3d 873 (*Miller*) the victim was injured multiple times, including a gunshot which pierced his arm near the elbow. *Miller* determined the jury could reasonably determine the bullet piercing the victim's arm was sufficient to find a great bodily injury. (*Id.* at p. 883.)

In *People v. Lopez* (1986) 176 Cal.App.3d 460 (*Lopez*) the defendant shot two victims, one in the right hip cheek and the other through the thigh. There was no evidence either victim sought medical treatment or experienced more than momentary distress. (*Id.* at p. 463.) The *Lopez* court found the injuries sufficient to support great bodily injury enhancements, noting the penetrating wounds could not be called superficial and the victims felt pain. *Lopez* determined the bullet wounds were no less "transitory or short-lived" (*id.* at p. 465) as the gunshot wound suffered by the victim in *Miller*. Accordingly, *Lopez* upheld the jury's determination the penetrating wounds constituted great bodily injuries.

Here, Guzman suffered a gunshot wound that went completely through his arm. Such a wound cannot be called superficial. Guzman required overnight hospitalization and received medication. The officer who took Guzman's statement at the hospital informed the jury Guzman appeared either heavily medicated or in pain. Appellant suffered scarring, which he showed the jury.

It was a question of fact for the jury to determine whether Guzman suffered great bodily injury. (*People v. Escobar, supra,* 3 Cal.4th at p. 750.) It is certainly a fine line that separates an injury from being significant from one that does not reach that description. However, it is the trier of fact who must make that determination in most situations. (*Lopez, supra,* 176 Cal.App.3d at pp. 463-464.) Here, based on this record, the jury could reasonably determine Guzman's gunshot wound qualified as great bodily injury. (*Miller, supra,* 18 Cal.3d at p. 883; *Lopez, supra,* 176 Cal.App.3d at p. 463.) As such, we will not disturb their findings on appeal.

15.

Appellant, however, cites *People v. Wolcott* (1983) 34 Cal.3d 92 (*Wolcott*) and *People v. Le* (2006) 137 Cal.App.4th 54 (*Le*) as examples of great bodily injury where the victims suffered more traumatic gunshot wounds than Guzman.[4]  These authorities do not assist appellant.

In *Wolcott*, the victim's gunshot wound left bullet fragments in his arms and cut muscle tissue.  Some fragments were purposefully left to work their way out naturally.  The victim lost little blood, received no sutures, was released from the hospital after treatment, went to work the next day, and did not suffer any permanent disability.  The victim continued to feel pain when touched near the unremoved bullet fragments. (*Wolcott, supra,* 34 Cal.3d at p. 107.)  In affirming the jury's finding of great bodily injury, *Wolcott* noted the victim's penetrating wounds were not properly classified as superficial and the lasting fragments made the injuries more than transitory or short-lived. (*Id.* at p. 108.)

In *Le, supra,* 137 Cal.App.4th 54, the victim was struck by a bullet that travelled through his left leg into his right inner thigh and lodged in his right outer thigh.  He sustained soft tissue and muscular injury to both legs, was released from the hospital within 24 hours after the bullet was removed, but could not work for a week and could not walk or get up without assistance.  It took seven weeks for the victim to walk without a limp.  *Le* affirmed the jury's finding of great bodily injury, noting the defendant cited no authority holding a soft tissue injury could not qualify as a great bodily injury.  (*Id.* at p. 59.)

---

**4**    Appellant also cited *People v. Hood* (2014) 223 Cal.App.4th 1356 (*Hood*) as authority requiring reversal.  However, after filing his opening brief, the Supreme Court granted review of *Hood* on June 11, 2014, rendering it not citable as superseded by grant of review.  (*People v. Hood* (June 11, 2014, S217462) ___ Cal.4th ___ [2014 Cal.LEXIS 3778].)

Appellant contends Guzman's gunshot wound was not as severe as the wounds suffered by the victims in *Wolcott* and *Le*. This does not alter our conclusion. The jury had sufficient evidence to make its findings after hearing the testimony and examining Guzman's gunshot wound. The jury was able to determine firsthand the wound's size and the amount of scarring, plus hear the testimony regarding Guzman's condition in the hospital. As such, sufficient evidence existed to sustain the jury's finding, which we will not disturb on appeal even though the circumstances might reasonably point to a contrary finding. Accordingly, appellant is not entitled to reverse the jury's true findings in count 1 under section 12022.53, subdivision (d), or in count 3 under section 12022.7.

**III.    The Trial Court Erred in Imposing the Firearm Enhancements in Count 2.**

Appellant asserts the trial court erred when it imposed punishment under both section 12022.53, subdivision (c), and section 12022.5, subdivision (a), in count 2. Respondent concedes error occurred. We appreciate respondent's concession and find it appropriate under *People v. Gonzalez* (2008) 43 Cal.4th 1118 (*Gonzalez*).

In count 2, the jury found true that appellant personally and intentionally discharged a firearm under section 12022.53, subdivision (c), during the attempted murder of Hernandez. The jury also found true that he personally used a firearm in commission of a felony under section 12022.5, subdivision (a). The trial court imposed separate punishments for each of these special allegations in count 2, sentencing appellant to an additional 20 years under section 12022.53, subdivision (c), and a consecutive 10 years pursuant to section 12022.5, subdivision (a). The court did not stay the 10-year enhancement under section 12022.5, subdivision (a).

Section 12022.53 requires a trial court to impose and then stay any remaining firearm enhancements under sections 12022.53 and 12022.5 that were found true for the same crime once punishment is imposed for the section 12022.53 firearm enhancement with the longest term of imprisonment. (*Gonzalez, supra,* 43 Cal.4th at p. 1123.) Here, the trial court was required, but failed, to stay the 10-year enhancement imposed in count

17.

2 under section 12022.5, subdivision (a). Accordingly, the abstract of judgment must be amended.

In addition, the abstract of judgment fails to list any of the other imposed enhancements for count 2. As such, we further order the abstract amended to reflect the trial court's sentence enhancements in count 2 under section 186.22, subdivision (b), and section 12022.53, subdivision (c). (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186 [abstract of judgment must be corrected to reflect the oral judgment of the sentencing court].)

## IV.     Appellant's Conviction in Count 5 Must be Reversed.

Appellant argues his conviction in count 5 for active participation in a criminal street gang under section 186.22, subdivision (a), must be reversed due to insubstantial evidence. Respondent concedes insufficient evidence exists. Again, we appreciate respondent's concession and find it appropriate under *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*).

A defendant who commits a crime in the absence of other gang members cannot be guilty of active gang participation under section 186.22, subdivision (a). (*Rodriguez, supra,* 55 Cal.4th at p. 1139.) Here, there was no evidence other gang members participated with appellant in these crimes. Accordingly, appellant's conviction for active participation in a criminal street gang under section 186.22, subdivision (a), must be reversed.[5]

## DISPOSITION

This matter is remanded to the trial court to correct the abstract of judgment as follows: to reflect in count 2 the 20-year enhancement imposed under section 12022.53, subdivision (c); to reflect in count 2 the 10-year enhancement imposed under section

---

[5]     In light of this reversal, we will not address appellant's alternative contention that the trial court erred when it imposed a concurrent prison sentence for count 5 rather than staying punishment pursuant to section 654.

186.22, subdivision (b); to reflect in count 2 the 10-year enhancement imposed under section 12022.5, subdivision (a), which is to be stayed; and to reverse count 5. The trial court shall forward the amended abstract of judgment to the appropriate authorities. The judgment is otherwise affirmed.

_____
LEVY, Acting P. J.

WE CONCUR:

_____
DETJEN, J.

_____
PEÑA, J.