Filed 2/26/26  P. v. Sylvester CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM CHARLES SYLVESTER,<br><br>    Defendant and Appellant. | B337532<br><br>(Los Angeles County<br>Super. Ct. No. BA131014) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Keith Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Shezad Thakor and Nancy Lii Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant William Charles Sylvester appeals from the judgment following his resentencing under Penal Code[1] section 1172.75. He argues under section 1385, subdivision (c)(2)(B), the trial court on resentencing was required to strike all but one of the multiple enhancements imposed on his original sentence. In the alternative, to the extent section 1385 does not mandate striking of multiple enhancements, defendant argues the resentencing court nonetheless abused its discretion by not striking additional enhancements.

Consistent with precedent from this and other Courts of Appeal, we hold section 1385, subdivision (c)(2)(B) does not require trial courts to strike enhancements when multiple enhancements are alleged in a single case — whether to strike enhancements in that circumstance remains at the discretion of the trial court.

We further hold the trial court did not abuse its discretion. Although neither the court nor the parties expressly invoked section 1385 or the applicable mitigating circumstances during resentencing, under the Rules of Court, we presume the trial court considered those circumstances because the record does not affirmatively indicate otherwise. (See Cal. Rules of Court,[2] rule 4.409.) Also, given defendant's pre- and postconviction conduct, the trial court's finding that it was not in the interest of justice to strike additional enhancements was not arbitrary, capricious, or patently absurd.

Our conclusion that the trial court properly applied section 1385 disposes of defendant's claim of ineffective

---

[1] Unspecified statutory citations are to the Penal Code.

[2] Unspecified rule citations are to the Rules of Court.

assistance of counsel, because defendant has not demonstrated prejudice.

Accordingly, we affirm.

## BACKGROUND

### 1. *Conviction and sentencing*

On July 22, 1997, a jury found defendant guilty of second degree murder, and found true that he had personally used a firearm in committing the offense. The victim was the mother of defendant's child. According to the opinion in defendant's appeal from his conviction, defendant shot the victim during an argument about child custody.

On August 20, 1997, the trial court sentenced defendant to a total of 41 years to life. This consisted of 15 years to life for the murder, doubled to 30 years for a prior strike under the "Three Strikes" law, plus the midterm of four years for the firearm enhancement, a five-year prior conviction enhancement under section 667, subdivision (a)(1), and two 1-year enhancements under section 667.5, former subdivision (b) for two prior prison terms.

### 2. *Resentencing proceedings*

On or about February 16, 2023, the Department of Corrections and Rehabilitation referred defendant to the trial court under section 1172.75 for review of his sentence. On September 19, 2023, the trial court found defendant eligible for relief, recalled defendant's sentence, and set the matter for resentencing.

In advance of the resentencing hearing, held on February 21, 2024, neither defense counsel nor the People filed

any written briefing. At the hearing, the trial court stated it had reviewed defendant's "C-File," which it marked as exhibit 1. This file contains, inter alia, records of defendant's conduct in prison.

The trial court then heard argument from counsel. Defense counsel requested the trial court strike the two enhancements under section 667.5, former subdivision (b), and the court did so.

Defense counsel additionally requested the court strike the five-year enhancement under section 667, subdivision (a)(1), and reduce the firearm enhancement to the low term of three years. The court denied these requests.

The court stated, "In the C-File, I notice the defendant has numerous areas of misconduct: possession of a controlled substance in prison, participating in a race [riot], refusing to obey orders during an emergency, refusing direct orders, theft of state food, possession of marijuana. Again, numerous issues of refusing official orders. And then it goes on about 10 different times." The court acknowledged it had the discretion to strike or lower the term on the firearm enhancement, and also had the discretion to strike the section 667, subdivision (a)(1) enhancement. The court concluded, however, "based upon the defendant's record, both before and after conviction, I did not find it to be in the interest of justice to do so."

The trial court therefore struck the two section 667.5, former subdivision (b) enhancements as required under section 1172.75 and resentenced defendant to 39 years to life.

Defendant timely appealed.

## DISCUSSION

Although the trial court struck defendant's enhancements under section 667.5, former subdivision (b), defendant argues the

4

trial court erred under section 1385 by not dismissing one or more of the remaining enhancements. We disagree.[3]

## A. Governing Law

### 1. Section 1172.75

Before January 1, 2020, section 667.5, former subdivision (b) required that trial courts impose a one-year sentence enhancement for each prior prison or county jail term the defendant served if the defendant had not remained free of custody for the preceding five years. (§ 667.5, former subd. (b); *People v. Jennings* (2019) 42 Cal.App.5th 664, 681.) This is no longer the case. Now, section 1172.75 provides, "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (§ 1172.75, subd. (a).)

Section 1172.75 further directs correctional officials to identify inmates serving sentences that include an enhancement under section 667.5, subdivision (b) and bring those inmates to the attention of the original sentencing court. (§ 1172.75, subd. (b).) If the court determines the sentence includes an invalid enhancement, "the court shall recall the sentence and resentence the defendant. . . ." (*Id.*, subd. (c).)

" '[S]ection 1172.75 requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements.'

---

[3] The Attorney General argues defendant forfeited his arguments under section 1385 by not raising them below. We decline to reach this argument. Assuming arguendo defendant has preserved his challenge, it nonetheless fails on the merits, as we set forth *post*.

5

[Citations.]" (*People v. Garcia* (2024) 101 Cal.App.5th 848, 855.) The resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety," but in no event may resentencing "result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).)

In resentencing, courts "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) Courts "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (d)(3).)

### 2. Section 1385

Section 1385 governs a sentencing court's discretion to, inter alia, strike or dismiss enhancements. Subdivision (c)(1) of the statute provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of [nine

6

enumerated] mitigating circumstances . . . are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Id.*, subd. (c)(2).)

Two of the enumerated mitigating circumstances are at issue here.  First, "[m]ultiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed."  (§ 1385, subd. (c)(2)(B).) Second, "[t]he enhancement is based on a prior conviction that is over five years old."  (*Id.*, subd. (c)(2)(H).)

### 3.    Standard of review

We review sentencing decisions under sections 1172.75 and 1385 for abuse of discretion.  (*People v. Dozier* (2025) 116 Cal.App.5th 700, 709 [section 1172.75], review granted Feb. 11, 2026, S294597; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*) [section 1385].)  " 'A ruling subject to this standard of review "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' [Citation.]"  (*People v. Aguirre* (2025) 18 Cal.5th 629, 687.)

Interpretation of the statutes themselves is an issue of law we review de novo.  (See *People v. Cota* (2023) 97 Cal.App.5th 318, 335.)

### B.    Section 1385 Does Not Require the Trial Court To Strike an Additional Enhancement

Defendant argues that because section 1172.75, subdivision (c)(2)(B) states when "[m]ultiple enhancements [are]

alleged," "all enhancements beyond a single enhancement shall be dismissed," the trial court in the instant case was required to dismiss at least one of the two remaining enhancements on his sentence.

As defendant concedes, appellate courts have rejected his interpretation. (See, e.g., *People v. Mazur* (2023) 97 Cal.App.5th 438, 445; *People v. Anderson* (2023) 88 Cal.App.5th 233, 241 (*Anderson*); *People v. Walker* (2022) 86 Cal.App.5th 386, 396–398 (*Walker I*), abrogated on other grounds by *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker II*).) We agree with these decisions.

We find persuasive the following from *Anderson*: "[T]he statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' (§ 1385, subd. (c)(1), italics added.) In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice. The nature of this condition is further explained by the Legislature's directive that the court, while 'exercising its discretion under this subdivision, . . . shall consider and afford great weight' to evidence of certain factors, and proof of one of the factors 'weighs greatly' in favor of dismissal 'unless' the court finds dismissal would endanger public safety. (*Id.*, subd. (c)(2).) This language, taken together, explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Anderson*, *supra*, 88 Cal.App.5th at p. 239.)

*Anderson* continues, "[I]f we were to read subdivision (c)(2)(B) and (C) as mandatory, then the existence of those factors

8

'would not "weigh greatly" in favor of dismissal — it would weigh *dispositively*.' [Citation.] In addition, '[t]hat construction would also require us to accept that our Legislature . . . opted to embed that mandate as an addendum to one of nine mitigating factors to be given great weight in the context of a trial court's discretionary decision whether to dismiss. In other words, if our Legislature was trying to implement a rule of mandatory and automatic dismissal, it picked a very circuitous way to do so.' [Citation.]" (*Anderson*, *supra*, 88 Cal.App.5th at p. 240, quoting *Walker I*, *supra*, 86 Cal.App.5th at pp. 397–398.)

Defendant argues we should not follow these prior decisions rejecting his interpretation. He contends the plain meaning of "shall be dismissed" is that the dismissal is mandatory, not discretionary. To the extent there is any ambiguity, he argues canons of statutory interpretation are in his favor.

Specifically, defendant argues reading section 1385, subdivision (c)(2)(B) as discretionary renders the term "shall" surplusage. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131 [courts should avoid interpretations that make some words surplusage] He maintains the "last antecedent rule," under which qualifying words are applied to the words immediately preceding and not to other, more remote words (*People v. Le* (2006) 137 Cal.App.4th 54, 62), suggests the "Legislature chose to single out [section 1385, subdivision (c)(2)(B)] for special treatment." He argues the specific language of subdivision (c)(2)(B) should control over the more general language in section 1385 granting trial courts discretion to dismiss enhancements. (See *Estate of Kramme* (1978) 20 Cal.3d 567, 576 ["the specific statute controls and takes priority over a general

9

statute encompassing the same subject"].) He contends under the rule of lenity, any ambiguity in the statute should be interpreted in defendant's favor. (See *In re M.M.* (2012) 54 Cal.4th 530, 545.)

We agree with *Anderson* and *Walker I*, however, that section 1385, subdivision (c)(2)(B) cannot be read as mandatory when the Legislature included it on a list of factors that the Legislature made clear were not dispositive, but rather "weigh[ ] greatly in favor of dismissing the enhancement." (§ 1385, subd. (c)(2).) Defendant urges us to read the "shall be dismissed" language as an "exception" to the otherwise discretionary factors. A prohibition on imposition of multiple enhancements would be a significant change in the law, and not one the Legislature would bury in a list of otherwise discretionary factors, at least not without additional indicia of intent.

Defendant argues we should follow *Mendoza*, which defendant contends "harmonized" section 1385's language while "giv[ing] effect to the mandatory dismissal language." *Mendoza* concerned another mitigating circumstance under section 1385, namely subdivision (c)(2)(C), which provides, "The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed."[4] (See *Mendoza, supra*, 88 Cal.App.5th at pp. 290–291.) Despite that provision, the trial court in *Mendoza* declined to dismiss a 20-year firearm enhancement, finding the dismissal would endanger public safety. (*Id.* at pp. 293–294.) The Court of Appeal affirmed, concluding, based on the language of section 1385, that "consideration of the mitigating factors in

---

[4] Section 1385, subdivisions (c)(2)(B) and (C) are the only enumerated mitigating circumstances with "shall be dismissed" language.

10

section 1385[, subdivision ](c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety." (*Mendoza*, at p. 297.)

Mendoza expressly cabined its holding, stating, "[B]ecause the [trial] court found that dismissal of the firearm enhancement would endanger public safety, we need not and do not analyze how the 'shall be dismissed" language in section 1385[, subdivision ](c)(2)(C) operates when a trial court does not find that dismissal would endanger public safety." (*Supra*, 88 Cal.App.5th at p. 297.) In a footnote, however, the Court of Appeal "note[d] that it is possible to interpret the statute in such a way as to give full effect to all of its provisions." (*Id.* at pp. 297–298, fn. 6.) The court suggested the statute could be read, inter alia, such that "if the court does not find that dismissal of the enhancement would endanger public safety, then the court must dismiss any enhancement that 'could result in a sentence of over 20 years' (§ 1385[, subdivision ](c)(2)(C)) or 'all enhancements beyond a single enhancement' when multiple enhancements are proven (§ 1385, subd. (c)(2)(B).)" (*Mendoza*, at pp. 297–298, fn. 6.) In other words, *Mendoza* suggested a reading of section 1385 in which dismissal of all but one multiple enhancement *is* mandatory *unless* there is a finding the dismissal would endanger public safety.

*Mendoza*'s footnote is dicta, as acknowledged by the *Mendoza* court itself, which stated expressly it was declining to address how to apply the "shall be dismissed" language when there has been no finding of danger to public safety. (*Supra*, 88 Cal.App.5th at p. 297.) Regardless, although *Mendoza* offers an alternative interpretation of section 1385 arguably favorable to defendant's position here, *Anderson*'s interpretation is more

11

persuasive.  Again, we cannot conclude the Legislature intended to prohibit imposition of multiple enhancements when the language purportedly doing so is on a list of factors that are not mandatory, but merely "weigh[ ] greatly in favor of dismissing the enhancement."  (§ 1385, subd. (c)(2).  The Legislature would not effect as significant a change in the law as a prohibition on multiple enhancements in such a " 'circuitous' " manner.  (*Anderson, supra*, 88 Cal.App.5th at p. 240.)

In sum, we decline to adopt defendant's interpretation of section 1385, subdivision (c)(2)(B) as mandating dismissal of all but one of his enhancements.

## C.    The Trial Court Did Not Abuse its Discretion In Declining To Dismiss the Remaining Enhancements

Alternatively, defendant argues the trial court abused its discretion in declining to dismiss the remaining enhancements. He argues there were two mitigating circumstances in defendant's favor:  the multiple-enhancements factor discussed *ante,* and the fact his section 667, subdivision (a)(1) enhancement "is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2)(H).)  Defendant contends his "record after conviction did not 'neutralize' the great weight" the court should have accorded those mitigating circumstances.

At the time of the resentencing in the instant case, the Courts of Appeal were divided as to how trial courts were to apply the Legislature's mandate to "afford great weight" to evidence of the mitigating circumstances under section 1385, subdivision (c)(2).  *Walker I* held the presence of one of the enumerated mitigating circumstances "erects a rebuttable presumption that obligates a court to dismiss the enhancement unless the court finds that dismissal of that enhancement . . .

12

would endanger public safety." (*Walker I*, *supra*, 86 Cal.App.5th at pp. 386, 391.)

*People v. Ortiz* (2023) 87 Cal.App.5th 1087 disagreed with *Walker I*, holding "the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement." (*Id.* at p. 1098.) *Ortiz* concluded the legislative mandate to afford the enumerated mitigating circumstances great weight "does not preclude a trial court from determining that countervailing factors — other than the likelihood of physical or other serious danger to others — may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice." (*Ibid.*) The trial court must still "engage[ ] in a holistic balancing with special emphasis on the enumerated mitigating factors." (*Id.* at p. 1096.)

Subsequent to the resentencing in the instant case, our Supreme Court resolved the split of authority by agreeing with, and expanding upon, *Ortiz*. (*Walker II*, *supra*, 16 Cal.5th at p. 1029 ["We conclude that the plain language of section 1385, subdivision (c)(2) contemplates that a trial court will exercise its sentencing discretion in a manner consistent with the *Ortiz* court's understanding."].) The high court elaborated: "[A]bsent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial,

13

credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Ibid.*)

Defendant argues the trial court made no findings regarding public safety, and therefore, under *Walker II*, "the presence of even one enumerating circumstance should have 'generally result[ed] in the dismissal of an enhancement unless the sentencing court [found] substantial credible evidence of countervailing factors' that may neutralize the great weight of that circumstance." Defendant further contends the trial court "did not weigh aggravating and mitigating factors or state that it accorded great weight to any mitigating factor," instead declining to dismiss the enhancements because of defendant's misconduct in prison. According to defendant, this was an abuse of discretion, because the misconduct identified by the court last occurred in 2013, and the court "failed to account for [defendant's] significant rehabilitative efforts in prison," including earning his Graduate Equivalency Diploma, completing a "13-month healing and accountability program," and receiving "praise from staff."

The mere fact the trial court did not expressly identify any mitigating evidence or circumstance, or state it was affording great weight to that evidence or circumstance, does not establish an abuse of discretion. Indeed, under rule 4.409, "[r]elevant factors enumerated in [the criminal rules] . . . will be deemed to have been considered unless the record affirmatively reflects otherwise." This includes the enumerated factors under section 1385, subdivision (c), which the Rules of Court incorporate by reference. (See rule 4.428(c)(2).)

14

We cannot conclude the trial court abused its discretion in ruling that dismissal of additional enhancements would not be in the interest of justice.  There is nothing arbitrary, capricious, or patently absurd about the trial court's finding that defendant's misconduct in prison, including drug offenses, failure to follow orders, and participation in a race riot, as well as the murder that led to his incarceration in the first place, outweighed the enumerated circumstances under section 1385, subdivision (c) or the evidence of defendant's positive conduct in prison.  Although defendant argues the cited misconduct last occurred in 2013, and his more recent conduct indicates he is largely " 'disciplinary free,' " it is for the trial court to weigh the evidence, not us.

Defendant argues the record is ambiguous as to whether the trial court understood how to apply its discretion under section 1385, and therefore we should not presume from the record's silence the trial court properly considered the relevant factors.  Defendant cites *People v. Ochoa* (2020) 53 Cal.App.5th 841 (*Ochoa*) and *People v. Panozo* (2021) 59 Cal.App.5th 825 (*Panozo*) in support, but those cases are distinguishable.

The question in *Ochoa* was whether the trial court at the time of sentencing was aware that it was statutorily required to consider youth-related mitigating factors before imposing a sentence of life without possibility of parole.  (*Supra*, 53 Cal.App.5th at p. 850.)  The Court of Appeal held the record was at best ambiguous on this question, because, although the trial court had accepted evidence of youth-related mitigating factors, it had done so *after* sentencing the defendant.  (*Id.* at p. 853.)  Further, in accepting the evidence the trial court referred solely to that evidence's use by a future parole board, not as a mitigating factor during sentencing itself.  (*Ibid.*)  The Court

15

of Appeal concluded this record suggested the trial court found, incorrectly, that youth-related mitigating factors were relevant solely to youth offender parole hearings, not to sentencing. (*Ibid.*) "Accordingly, when, as here, the record is at the very least ambiguous as to whether the court understood its obligation to consider youth-related mitigating factors at sentencing before making the discretionary sentencing decision [whether to impose a life-without-parole sentence], remand is appropriate." (*Ibid.*)

The ambiguities present in *Ochoa* are not present here. Whereas the trial court in *Ochoa* did not receive the mitigating evidence until after sentencing, here the mitigating circumstances were clear on the face of the record of conviction at the time of resentencing, namely that the prosecution had alleged multiple enhancements, and one of those enhancements was based on a prior conviction more than five years old. The trial court made no statements suggesting a misunderstanding of the significance of those mitigating circumstances; rather, it evaluated whether dismissal of additional enhancements was in the interest of justice, the proper standard under section 1385.

In *Panozo*, the question was whether the trial court understood its statutory obligation to consider the defendant's military-service-related posttraumatic stress disorder (PTSD) as a mitigating factor under sections 1170.9 and 1170.91. (*Panozo, supra*, 59 Cal.App.5th at p. 828.) Citing "the Legislature's resolve to mandate special consideration for affected veterans at sentencing," the Court of Appeal concluded "that a court's compliance with the mandates of sections 1170.9 and 1170.91 cannot be inferred from an ambiguous record." (*Panozo*, at pp. 836–837.) In *Panozo*, although the trial court was aware the defendant had served in the military and suffered from PTSD, it

did not mention those circumstances when listing mitigating and aggravating factors on the record. (*Id.* at pp. 838–839.) Further, neither the trial court nor the parties cited sections 1170.9 or 1170.91, and the parties did not identify the defendant's PTSD as a mitigating factor, much less one that the trial court was required to consider. (*Panozo*, at pp. 838–839.) The Court of Appeal concluded, "There is no evidence the trial court was aware of its statutory obligation to consider service-related mitigating factors at sentencing — rather, all indications are to the contrary." (*Id.* at p. 839.) The Court of Appeal remanded for a new sentencing hearing. (*Id.* at p. 841.)

Unlike in *Panozo*, in which the trial court appeared to be unaware of sections 1170.9 and 1170.91, there is nothing in the record indicating the trial court was unaware of section 1385. Although neither the court nor the parties expressly mentioned section 1385, that is the very statute granting courts discretion to dismiss enhancements in the interest of justice. Therefore the trial court necessarily was acting under section 1385 when it noted its discretion to dismiss the enhancements, but determined it was not in the interest of justice to do so. Further, unlike in *Panozo* where the applicable mitigating circumstance was listed in separate statutes of which a trial court conceivably might be unaware, here the applicable mitigating circumstances are listed in section 1385 itself. The record thus demonstrates the trial court applied section 1385, and there is no affirmative indication the court did not consider and afford great weight to the mitigating factors under section 1385, subdivision (c)(2).

It is true the trial court did not have the benefit of *Walker II* at the time of resentencing, but we cannot conclude *Walker II* would lead the trial court to a different outcome. Even

17

without *Walker II*, the express language of 1385 itself, along with *Walker I* and *Ortiz*, made clear that at the time of defendant's resentencing, the trial court was to afford significant (and in the case of *Walker I*, presumptive) weight to the enumerated circumstances. Again, there is no affirmative indication the trial court did not abide by section 1385's directives, and therefore no basis to conclude the court misapplied or misunderstood its discretion.

Because the record does not indicate the trial court failed properly to apply section 1385, defendant cannot prevail on his claim his resentencing counsel was constitutionally ineffective for not citing section 1385 and arguing the trial court should afford great weight to the applicable mitigating circumstances. (See *In re Tellez* (2024) 17 Cal.5th 77, 88 [to establish ineffective assistance of counsel, a defendant must show, inter alia, prejudice from counsel's purportedly deficient performance].)

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.          WEINGART, J.


18